**Exhibit 2 to August 22, 2023 Removal Complaint**

**August 4, 2023 Criminal Complaint and Affidavit
Mag. No. 23-001191 RT (District of Hawaii)**

CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

AISLINN K. AFFINITO
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: aislinn.affinito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA



**SEALED**
BY ORDER OF THE COURT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Aug 04, 2023
Lucy H. Carrillo, Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) MAG. NO. 23-001191 RT |
| Plaintiff, | ) CRIMINAL COMPLAINT; |
| v. | ) AFFIDAVIT |
| JUAN CARLOS RIOS GAVIRIA, | ) |
| Defendant. | ) |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## Count 1
## Simple Assault
## (18 U.S.C. § 113(a)(5))

On or about July 25, 2023, within the special aircraft jurisdiction of the United States, namely Hawaiian Airlines, Flight 51, in flight, and within the jurisdiction of the District of Hawaii, JUAN CARLOS RIOS GAVIRIA, the defendant, did assault S.D., a passenger on Hawaiian Airlines, Flight 51, by willfully and intentionally touching and making physical contact with S.D. in an offensive manner without justification or excuse.

All in violation of Title 18, United States Code, Section 113(a)(5) and Title 49, United States Code, Section 46506(1).

## Count 2
## Abusive Sexual Contact
## (18 U.S.C. § 2244(b))

On or about July 25, 2023, within the special aircraft jurisdiction of the United States, namely Hawaiian Airlines, Flight 51, in flight, and within the jurisdiction of the District of Hawaii, JUAN CARLOS RIOS GAVIRIA, the defendant, did knowingly have sexual contact with S.D., a passenger on Hawaiian Airlines, Flight 51, without the permission of S.D.

All in violation of Title 18, United States Code, Section 2244(b) and Title 49, United States Code, Section 46506(1).

I further state that I am a Task Force Officer with the Federal Bureau of Investigation (FBI), and that this Complaint is based upon the facts set forth in the following affidavit, which is attached hereto and made part of this Complaint by reference.

_____  August 04, 2023
Sean Nahale, Task Force Officer
Federal Bureau of Investigation

Sworn to under oath before me telephonically and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4(d) and 4.1(b) on August 4, 2023, at Honolulu, Hawaii.



_____
Rom A. Trader
United States Magistrate Judge

3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) MAG. NO. 23-001191 RT |
|---|---|
| Plaintiff, | ) AFFIDAVIT |
| v. | ) |
| JUAN CARLOS RIOS GAVIRIA, | ) |
| Defendant. | ) |

TASK FORCE OFFICER'S AFFIDAVIT
IN SUPPORT OF CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations and to make arrests.

2. I am currently a Task Force Officer with the Federal Bureau of Investigation ("FBI") and have been employed by the FBI since August 2021. I am presently assigned to the of the Honolulu Division of the FBI. As part of my employment as a Task Force Officer with the FBI, I have completed law enforcement and investigative training, including but not limited to, general

investigative techniques, criminal law, and handling of evidence, among other topics. Through my training and experience, I have become familiar with the manner in which criminal offenders operate, and the efforts of those involved in such activities.

3. As an FBI Task Force Officer, one of my duties and responsibilities includes, but is not limited to, the investigation of possible criminal violations of assaults (Title 18, United States Code, Section 113) and sexual assaults (Title 18, United States Code, Section 2244).

4. The information contained in this affidavit is based on my personal knowledge and my training and experience, information obtained from other law enforcement personnel, information obtained from witnesses, and other evidence. This affidavit is intended merely to show that there is probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts as set forth in this affidavit, and my training and experience, there is probable cause to believe that Juan C. RIOS GAVIRIA, the defendant, committed violations of Title 18, United States Code, Sections 113(a)(5) and 2244(b).

## PROBABLE CAUSE

### Overview of the Investigation

6. On July 25, 2023, the law enforcement agency known as the Sheriff Airport Section, was called to the arrival gate at the Honolulu International Airport (HNL) for Hawaiian Airlines Flight 51 (HA 51), where it was reported that one male passenger was assaulted by another male passenger. Your affiant, as a Task Force Officer with the FBI, responded to the scene and conducted interviews, both on that day and during the ensuing investigation, of the victim, S.D.; the suspect, Juan C. RIOS GAVIRIA (RIOS GAVIRIA); and various witnesses.

7. On that day, HA 51 was traveling non-stop from John F. Kennedy International Airport (JFK) to HNL. The aircraft is described as an A330 style aircraft with two aisles, two seats along each of the windows, and a four-seater in the middle of the aircraft. This incident took place on the left two seats of a four-seater, if looking from the aft of the aircraft forward.

8. S.D. stated he was already seated in the left middle seat when RIOS GAVIRIA boarded and sat down on the left aisle seat. Prior to this, both passengers were strangers. RIOS GAVIRIA engaged S.D. in conversation where they spoke about their families and backgrounds. RIOS GAVIRIA shared that he had been married to a woman, but since his divorce, he had been seeing a man, who lived in Hawaii. RIOS GAVIRIA then asked for S.D.'s phone number,

3

offering to provide tour guide-like advice while S.D. was in Hawaii and should S.D. and his family ever visit Columbia, where RIOS GAVIRIA was from. S.D. provided his cell phone number in response.

9. While the aircraft was taxiing before liftoff, RIOS GAVIRIA shifted the conversation to the penis sizes of men in different countries. S.D. stated that he listened to RIOS GAVIRIA but did not engage in the conversation. At some point, S.D. felt RIOS GAVIRIA lightly grab his bicep, letting go after a couple seconds. S.D. did not react so as to not make a big deal out of it. A few seconds later, he felt RIOS GAVIRIA grab his upper thigh for a couple seconds, in a similar manner. S.D. felt RIOS GAVIRIA may have been testing his boundaries, although he still did not engage RIOS GAVIRIA.

10. A few minutes later, S.D. felt RIOS GAVIRIA's hand on his upper thigh for the second time. S.D. described this grip as being firmer and moving up his leg. S.D. immediately reacted by pushing RIOS GAVIRIA's hand off his leg. RIOS GAVIRIA responded, "no, no, no, no, no. Just one please!" S.D. told RIOS GAVIRIA he did "not like this" and "was not comfortable with this." RIOS GAVIRIA ignored S.D.'s request and again put his hand on S.D.'s thigh, this time "slipping" his hand between S.D.'s leg and grazing his testicle. RIOS GAVIRIA then grabbed S.D.'s hands and attempted to pull them toward RIOS GAVIRIA's crotch. S.D. thought RIOS GAVIRIA wanted S.D. to touch RIOS GAVIRIA's

4

penis. This time, a bit more forcefully, S.D. reiterated in a calm, firm tone that he was "not interested." When RIOS GAVIRIA asked why, S.D. responded that he had a wife and kid and was "not into this." RIOS GAVIRIA responded, "I want to touch you" and "you touch me." S.D. told RIOS GAVIRIA he did not want to be touched, and RIOS GAVIRIA temporarily stopped attempting to touch S.D.

11. At some point after takeoff, S.D. used the lavatory; upon his return RIOS GAVIRIA did the same. When RIOS GAVIRIA returned to his seat, he pressed his right shoulder firmly into S.D.'s and more aggressively reached into S.D.'s crotch and grabbed S.D.'s penis and testicles in a hard and deliberate manner. In response, S.D. again pushed RIOS GAVIRIA's hand away. When interviewed by your affiant, S.D. stated he was trained by the military to de-escalate situations and was relying upon those skills here to make these unwanted advances stop.

12. Shortly thereafter RIOS GAVIRIA again attempted to grab S.D.'s penis. In response, S.D. utilized one hand to prevent RIOS GAVIRIA from going further, while using the other hand to manipulate the inflight touch screen to notify the flight attendant. RIOS GAVIRIA immediately removed his hands and verbally apologized. RIOS GAVIRIA stated words to the effect of, he was sorry and they could "stop."

13. A flight attendant, M.R., responded to the call light initiated by S.D.

She stated the cabin lights were dim, but the plane was not dark. She arrived at the row and observed S.D. not making eye contact with her but repeating that he needed to be moved. The flight attendant explained it was a full flight and so there was nowhere to move him to. S.D. stated words to the effect of: you don't understand – I don't want to make an incident here, but I need to move; this man is being inappropriate. The flight attendant stated it looked as though S.D. was trying to control his anger. During this time, the flight attendant observed the male seated in the aisle seat, RIOS GAVIRIA, lean toward her and repeat several times "I'm a big guy, this is a small seat" and "I'm too big." At this point, Flight attendant M.R. felt something had happened and asked S.D. to accompany her to the aft of the plane.

14. Flight attendant M.R. called the attention of the lead flight attendant, T.T., to come over. In the meantime, another male flight attendant was present and noticed the "cauliflower ear" on S.D., which he told M.R. was from "fighting." The male flight attendant asked S.D. if he wanted to "crack" RIOS GAVIRIA, to which S.D. responded with words to the effect of: I can't; I have to think about my wife and child. S.D. told the flight attendants that RIOS GAVIRIA had touched him inappropriately, and the lead flight attendant gave approval for S.D. to sit in one of the flight crew seats for the remainder of the flight. Flight attendant T.T. stated when she was speaking with S.D. in the aft of the plane, she observed he

6

was "on the brink of tears."

15. Flight attendant M.R. stated that another flight attendant went to engage RIOS GAVIRIA and find out his side, but RIOS GAVIRIA pretended not to know English. Flight attendant M.R. found this odd since she had just been engaging with him, and RIOS GAVIRIA seemed to understand and speak the English language.

16. The female passenger seated to the right of S.D. had been asleep for a portion of the flight. This passenger, Y.N., related that she overheard S.D. and RIOS GAVIRIA talking earlier in the flight. At one point, she thought both men left to use the restroom, and upon their return, the mood of the conversation seemed "faster" and she did not think it was "nice" any longer. Y.N. could not tell what they were saying, and she did not observe any physical altercation.

17. The lead flight attendant, T.T., advised the Captain of the situation, and the crew opted to wait for law enforcement to handle the situation upon landing. Flight attendant T.T. stated after they moved S.D. to a new seat, there were no further incidents throughout the remainder of the flight.

18. Your affiant interviewed the male passenger, J.P., seated across the aisle to the left of RIOS GAVIRIA who also observed S.D. and RIOS GAVIRIA talking in the beginning of the flight. J.P. stated he fell asleep after the meal service and therefore did not hear or see anything after that.

**Statement by the Defendant**

19.     RIOS GAVIRIA provided a written statement in Spanish explaining the events in his own words.  RIOS GAVIRIA asserted that during their conversation, S.D. talked about having had sexual relations before with men but did not do so anymore because he was married.  RIOS GAVIRIA asserted that they ended up touching while talking and that S.D. grabbed RIOS GAVIRIA's penis first but said no when RIOS GAVIRIA tried to touch him.  RIOS GAVIRIA wrote that they continued to watch a movie and started talking again after their feet and arms touched, but S.D. told him he did not want any more.  RIOS GAVIRIA asserted that S.D. later "felt uncomfortable and closed in" and asked to change seats.

**CONCLUSION**

20.     Based on the foregoing facts, I respectfully submit that probable cause exists to arrest JUAN C. RIOS GAVIRIA, the defendant, for one (1) count of Simple Assault, in violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506(1), and one (1) count of Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506(1).

FURTHER AFFIANT SAYETH NAUGHT.

/ /

_____
Sean Nahale
Task Force Officer
Federal Bureau of Investigation

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at 5:28 p.m. on August 4, 2023.

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b), on August 4, 2023, at Honolulu, Hawaii.



_____
Rom A. Trader
United States Magistrate Judge